# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA CARMEN REYES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | Case No.  1:15-cv-01436-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 10, 16, 18) |

## I.

## INTRODUCTION

Plaintiff Maria Carmen Reyes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her Title II application for a period of disability and disability insurance benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from diabetes mellitus with neuropathy, history of right knee surgery, degenerative disc disease of the cervical spine, mood disorder, and obesity.  (ECF No. 10 at 3.) For the reasons set forth below, Plaintiff's Social Security appeal is denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 4, 6.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the current Title II application for disability insurance benefits on October 27, 2011, alleging disability beginning on December 1, 2009.  (AR 221-27.)  On February 16, 2012, Plaintiff's claim was initially denied, and was denied upon reconsideration on August 29, 2012.  (AR 62-93.)  Plaintiff requested and received a hearing before Administrative Law Judge John Cusker ("the ALJ").  On October 11, 2013, Plaintiff appeared at a hearing, during which she indicated that she wished to be represented by counsel, so the hearing was postponed. (AR 30-36.)  On February 28, 2014, Plaintiff appeared at a hearing with counsel.  (AR 37-62.)

On March 24, 2014, the ALJ denied Plaintiff's application for disability insurance benefits.  (AR 10-25.)  Plaintiff then appealed to the Appeals Council.  (AR 9.)  On July 25, 2015, the Appeals Council denied Plaintiff's request for review.  (AR 1-5.)

### A.    Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing through an interpreter on February 28, 2014.  Plaintiff's counsel indicated that the record was complete and that there was no additional evidence.  (AR 39-40.) [2]

Plaintiff was last insured on September 30, 2011.  (AR 40.)  She was 60 at the time of the hearing.  (AR 41.)  She has a driver's license and she is able to drive.  (AR 41.)  She is not able to read and write more than her name in English.  (AR 41-42.)  She attended primary school up to ninth grade in Mexico.  (AR 42.)  She last worked at a cannery cleaning up and breaking boxes of frozen vegetables.  (AR 42.)  In 2009, she was watching her daughter's children.  (AR 56.)  She has been unable to work since December 1, 2009.  (AR 42.)  She has not done any work since then except for taking care of three of her grandchildren, who are ages seven, six, and three.  (AR 42-43.)  Her daughter does not pay her for watching the grandchildren, but she "helps [her] out a little."  (AR 43.)

---

[2]  Plaintiff's counsel indicated that the 32 pages of new evidence submitted the day before the hearing was after the date that she was last insured, so they would not do anything for the period of time that they were discussing.  (AR 39-40.)

Plaintiff cannot work because of her depression, pain in her feet, and she cannot move her right arm.  (AR 43.)  She had these problems in 2011 and was getting treatment for them in 2011 with Dr. Felicia Jodhka at Merced Faculty Associates.  (AR 43-44.) She cannot exercise her right arm as much as she used to, such as stirring the soup, and it gets tired.  (AR 43.)[3]

The only kind of treatment that Dr. Jodhka provides Plaintiff is medication.  (AR 44.)  Plaintiff's blood sugars are controlled and if she takes two or three pain medications all day, her pain is controlled.  (AR 44-45.)  Plaintiff does not suffer any side effects from her medication.  (AR 44.)

Plaintiff indicated that her right knee area and left hip area hurt her.  (AR 45.)  Plaintiff had a right knee replacement in 2005, but it still hurts.  (AR 46.)  Plaintiff's knee pain is constant.  (AR 48-49.)  The doctors have not told Plaintiff what is causing the pain.  (AR 46.)  Plaintiff testified that the doctors have not told her that there is arthritis around her knee area, but then later during the hearing she testified that they say her knee pain is arthritis.  (AR 46-47, 55.)  Plaintiff takes Flanax and Liniment, over-the-counter medications for arthritis.  (AR 46-47.)  Plaintiff's right knee pain affects her ability to stand for a long time.  (AR 47.)  Plaintiff has a cane, which her doctor gave her in January 2014.  (AR 47.)  Plaintiff did not use any assistive devices prior to September 2011.  (AR 47.)  Walking or standing made the pain worse.  (AR 49.)  Plaintiff could stand and could walk for forty minutes before needing to lie down and elevate her feet prior to September 2011.  (AR 48.)  Plaintiff would elevate her feet four or five times a day for thirty minutes each.  (AR 49.)  Plaintiff fell about three or four times because of her knees prior to September 2011.  (AR 48.)  Plaintiff has not received any injections for the pain, any physical therapy, or any additional surgeries on her knee.  (AR 55-56.)

Plaintiff has had pain in the right side of her brain and her arm.  (AR 49.)  Plaintiff had surgery when her elbow bone popped out.  (AR 50.)  She has not had any x-rays or MRIs to her right shoulder, but she did have an examination of her cervical spine in 2008, which revealed arthritis.  (AR 50.)  Plaintiff could not pick up and carry more than a gallon of milk without

---

[3] The ALJ noted that Plaintiff was gesturing during the hearing with her right hand and forearm, so he was not sure what she meant when she said that she cannot move her arms.  (AR 43.)

hurting herself.  (AR 51.)  Plaintiff could only use her right arm and hand for a half hour before she needed to take a break.  (AR 51.)  When she bathed, her arm hurt.  (AR 52.)

It hurt Plaintiff to bend over, walk on uneven surfaces, and climb stairs.  (AR 51-52.)  Plaintiff is able to handle her own personal care, but she has to take breaks.  (AR 52.)  She was able to fix simple meals.  (AR 52.)  She could not take out the trash, do the dishes, or do the laundry.  (AR 52.)  She went to church or a social gathering about twice a month for an hour, during which she had difficulty sitting or standing.  (AR 53.)

Plaintiff took medication for her depression prior to the date last insured, but it did not take away all of her symptoms.  (AR 53-54.)  At the time of the hearing, Plaintiff was not receiving any mental health treatment.  (AR 55.)  Plaintiff testified that everything made her cry, and specifically when her children responded to her in a bad way and "like right now that [her] mom died that was also very hard on [her] right now."[4]  (AR 54.)  Plaintiff testified that she had daily crying spells that lasted for two or three hours.  (AR 55.)  Plaintiff indicated that in September 2011 she lived with her husband and her sister.  (AR 54.)  Plaintiff's daughter and grandchildren visited her daily for approximately an hour and she watched TV with her grandchildren.  (AR 54-55.)

A vocational expert ("VE") Judith Najarian also testified at the hearing.  (AR 57-60.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2011.

- Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2009, through her date last insured of September 30, 2011.

- Through the date last insured, Plaintiff had the following medically determinable impairments: diabetes mellitus with neuropathy; history of right knee surgery;

---

[4] The ALJ noted at this point of Plaintiff's testimony that it was clear that Plaintiff was not focusing on her condition prior to the date last insured.

degenerative disc disease of cervical spine; mood disorder; and obesity.

- Through the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, Plaintiff did not have a severe impairment or combination of impairments.

- Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 1, 2009, the alleged onset date, through September 30, 2011, the date last insured.

(AR 16-25.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Sec. Admin, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that

exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises three issues in this appeal. Plaintiff argues that the ALJ erred by: (1) failing to find that Plaintiff's mental impairments were severe impairments at step two of the sequential analysis; (2) failing to develop the record regarding Plaintiff's mental impairments; and (3) rejecting Plaintiff's credibility.

### A.    Mental Impairments at Step Two of the Sequential Analysis

1    Plaintiff argues that the ALJ erred by finding that her mental impairments, and
2    specifically her depression and mood disorder, were not severe at step two of the sequential
3    analysis.  Defendant counters that the ALJ correctly found that Plaintiff's mental impairments
4    were not severe based on the record.

5    Under the Social Security Act, disability is defined as the "inability to engage in any
6    substantial gainful activity by reason of any medically determinable physical or mental
7    impairment which can be expected to result in death or which has lasted or can be expected to
8    last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The burden
9    is on the claimant to prove that they are disabled at steps one through four, and at step five the
10   burden shifts to the Commissioner to show that there are a significant number of jobs in the
11   national community that the claimant can perform.  Bray v. Commissioner of Social Security
12   Admin., 554 F.3d 1219, 1222 (9th Cir. 2009).

13   As described above, at step two the ALJ is to consider the medical severity of the
14   impairments to determine if they meet the durational requirements under the Act.  20 C.F.R. §
15   404.1520(a)(4)(ii).  A severe impairment is an impairment or combination of impairments that
16   significantly limits the claimant's physical or mental ability to do basic work activities.  20
17   C.F.R. § 404.152(c).  Basic work activities are the abilities and aptitudes necessary to do most
18   jobs.  20 C.F.R. § 404.1521(b).  "An impairment is not severe if it is merely 'a slight abnormality
19   (or combination of slight abnormalities) that has no more than a minimal effect on the ability to
20   do basic work activities.' "  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R.
21   No. 96–3(p) (1996)).  Courts have found that step two is "a de minimis screening device [used]
22   to dispose of groundless claims."  Webb, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985);
23   Smolen, 80 F.3d at 1290).

24   The disability regulations set out four functional areas for evaluating mental disorders:
25   activities of daily living; social functioning; concentration, persistence or pace; and
26   decompensation.  20 C.F.R. § 404.1520a(c)(3).  The first three functional areas are rated on a
27   scale of none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).  If the ALJ
28   determines that the first three functional areas are "none" or "mild" and "none" for episodes of

decompensation, then the ALJ "will generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

The Court evaluates whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a medically severe mental impairment.

The ALJ found:

Because the [Plaintiff] had medically determinable mental impairments, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living.  In this area, the [Plaintiff] at most had mild limitation during the relevant period.  She was able to maintain a driver's license, and was able to drive.  She drove her grandchildren to school and picked them up.  She was able to care for her grandchildren. She performed household chores, including cooking several course meals daily, shopping, cleaning, vacuuming, laundry, mopping, and so on.

The next functional area is social functioning.  In this area, at most the [Plaintiff] had mild limitation.  She was able to live with relatives, get along with family, friends, neighbors, and authority figures.  She attended church.  She was able [to] care for her three grandchildren.

The third functional area is concentration, persistence or pace.  In this area, the [Plaintiff] at most had mild limitation.  She was able to maintain a driver's license and was able to drive, including transporting the grandchildren to and from school when required.  She was able to keep house, plan meals, shop for groceries, and cook multi-course meals.

The fourth functional area is episodes of decompensation.  In this area, the claimant had experienced no episodes of decompensation of extended duration. The claimant has not sought mental health care from any mental health care specialist.  No doctor has hospitalized her for psychiatric reasons.

Because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they were non-severe. (20 CFR 404.1520a(d)(1)).

In sum, the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities.   Thus, the claimant does not have a severe impairment or combination of impairments.

(AR 23-24.)

The ALJ found that Plaintiff had at most mild restrictions in her activities of daily living.

1  Plaintiff spent two hours each day preparing meals, three to four hours each day doing household

2  chores, shopped three times per week for two hours, drove, and took care of her grandchildren.

3  (AR 24, 265-68.)  Plaintiff does not explain how she has greater than mild restrictions in her

4  activities of daily living.

5       The ALJ found that Plaintiff had at most mild difficulties in maintaining social

6  functioning.  Plaintiff lived with her husband and sister, spent twice a week talking and visiting

7  with others, got along with authority figures, attended church every week, and saw her

8  grandchildren daily.  (AR 24, 54-55, 265-68, 271.)  Plaintiff does not explain how she has

9  greater than mild difficulties in maintaining social functioning.

10      The ALJ found that Plaintiff had at most mild difficulties in maintaining concentration,

11  persistence, and pace.  Plaintiff maintained a driver's license, drove every day, shopped three

12  times per week for groceries, planned and prepared complex meals, and drove her grandchildren

13  to and from school.  (AR 24, 265-68.)  Plaintiff does not explain how she has greater than mild

14  difficulties in maintaining concentration, persistence, and pace.

15      The ALJ found that Plaintiff did not have any episodes of decompensation.  Plaintiff does

16  not explain how she had any episodes of decompensation.

17      Therefore, the ALJ found that Plaintiff had at most mild limitations in the first three

18  categories and no episodes of decompensation.  The ALJ could still have determined that

19  Plaintiff had a severe impairment based on evidence in the record.  However, the only evidence

20  in the record that could support that Plaintiff's depression was severe is Dr. Baudino's December

21  2011 letter, Dr. Jodhka's opinion, and Plaintiff's testimony that she cried for two to three hours a

22  day.  As discussed below, the ALJ properly rejected Dr. Baudino's December 2011 letter and Dr.

23  Jodhka's opinion and properly discounted Plaintiff's credibility.[5]

24      The fact that a doctor diagnoses a disorder is not evidence that the disorder causes more

25  than minimal limitations.  Plaintiff has the obligation to provide evidence of functional

26

27  [5] Plaintiff argues that she testified that she was still crying a lot and everything would trigger her crying, for example her children responding to her in a bad way and the passing of her mother.  (AR 54.)  However, it was clear that Plaintiff was referring to the time period after the date that she was last insured.  When asked about specifically prior

28  to September 2011, Plaintiff testified that she experienced 2 to 3 hour crying spells almost daily.  (AR 55.)

1   limitations and she has failed to do so.  Although Plaintiff argues in her reply that the ALJ must

2   discuss the effects of nonsevere impairments in the RFC finding, the ALJ only makes an RFC

3   finding if there is at least one severe impairment.

4          1.      Rejection of Dr. Baudino's December 2011 letter

5          The ALJ rejected Dr. Baudino's December 2011 letter.  Plaintiff argues that Dr. Baudino

6   treated her for ongoing depression from 2010 through 2011 with medications and also discussed

7   other options that Plaintiff could not afford.  Dr. Baudino opined that Plaintiff was severely

8   depressed to the extent that she was unable to work and he did not see her symptoms improving

9   in the future.  (AR 349.)

10         The weight to be given to medical opinions depends upon whether the opinion is

11  proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d

12  821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater

13  weight than that of a nontreating physician because "he is employed to cure and has a greater

14  opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d

15  1035, 1040-41 (9th Cir. 1995) (citations omitted).  When the treating doctor's opinion is not

16  contradicted by another doctor, it can be rejected for "clear and convincing" reasons.  Baxter v.

17  Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If a treating physician's opinion is contradicted

18  by another doctor, it may be rejected only for "specific and legitimate reasons" supported by

19  substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198

20  (9th Cir. 2008) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).  The

21  opinions of non-examining physicians may serve as substantial evidence where they are

22  supported by and consistent with other evidence in the record.  Andrews, 53 F.3d at 1041.

23         The ALJ found:

24         I have carefully considered this opinion.  I have given it little weight for several
           reasons.  The state agency's medical consultants considered Dr. Baudino's
25         statement at the initial and reconsideration review levels, and on both occasions,
           discounted it because there was no history of psychiatric treatment, and more
26         importantly, no objective findings (i.e., mental status examinations (MSE)) in
           support of the opinion (see Exhibit 1A, pp. 5, 8, and 3A, pp. 5, 6).  The medical
27         consultants opined there was insufficient evidence (IE) to support the claim
           (Exhibits 1A, pp. 6, 7 and 3A, pp. 4, 5).  In other words, the claimant did not meet
28         her burden of proof at the second step of the sequential evaluation.  I accord that

1    opinion some weight.

2       Dr. Baudino's opinion that claimant was "disabled" impinges on an issue reserved
        for decision by the Social Security Administration (see CFR 404.1527(d), and
3       Social Security Ruling (SSR) 96-5p).  Opinions like these are not entitled to any
        special weight.  Here, the opinion is not supported by objective findings, and
4       hence, not entitled to any weight, because Dr. Baudino did not report any
        objective findings in support [sic] his opinion.  Moreover, Dr. Baudino's October
5       2011 report noted above, indicating mild distress but normal ambulation, some
        muscle spasm in the trapezius area, and mental status findings that included good
6       judgment, normal affect, with some symptoms of depression (Exhibit 2F, p. 17),
        does not support Dr. [sic] Baudino's opinion that the claimant was "disabled."

7

8    (AR 22.)

9        Defendant states that the ALJ noted that the treating source standard did not even apply

10   to Dr. Baudino's letter.  The Court finds that even if the treating source standard applied to Dr.

11   Baudino's letter, the ALJ provided specific and legitimate reasons[6] supported by substantial

12   evidence for rejecting Dr. Baudino's opinion.

13       First, the ALJ did not give any special weight to Dr. Baudino's opinion that Plaintiff was

14   "disabled" because whether Plaintiff is disabled is an issue reserved for the Commissioner.  (AR

15   22.)  While 20 C.F.R. § 416.927(b) requires an ALJ to consider medical opinions, Dr. Baudino's

16   letter is not a medical opinion but, rather, a disability opinion.  "In disability benefits cases,

17   physicians typically provide two types of opinions: medical opinions that speak to the nature and

18   extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e.,

19   opinions about whether a claimant is capable of any work, given her or his limitations."  Holohan

20   v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); Reddick v. Chater, 157 F.3d 715, 725 (9th

21   Cir. 1998) (in disability benefits case "physicians may render medical, clinical opinions, or they

22   may render opinions on the ultimate issue of disability—the claimant's ability to perform

23   work").  Dr. Baudino's letter is not a medical opinion, but rather an opinion on the ultimate issue

24   of disability.  See Martinez v. Astrue, 261 F. App'x 33, 35 (9th Cir. 2007) (unpublished).[7]

25       Under applicable Social Security regulations and rulings, a treating physician's disability

26   ─────────────
     [6] The Court notes that even if Dr. Baudino's opinion is uncontradicted in the record, the ALJ provided clear and
27   convincing reasons for rejecting it.

28   [7] Unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007 may be cited to the
     courts of this circuit in accordance with FRAP 32.1.  9th Cir. R. 36-3(b).

1   opinion is not entitled to controlling weight or any special significance, because the ultimate

2   issue of disability is for the Commissioner to make, taking into account a variety of factors.  20

3   C.F.R. § 416.927(d)(3) (opinion sources on issues reserved to the Commissioner are not given

4   "any special significance"); Soc. Sec. Ruling (SSR) 96–5p, 1996 WL 374183, at *1, *2, *5 (July

5   2, 1996) (the "adjudicator is precluded from giving any special significance" to an opinion from

6   a treating source on issues reserved to the Commissioner); Martinez, 261 F. App'x at 35 (a

7   disability opinion is "not accorded the weight of a medical opinion" because it "is an opinion

8   about an issue reserved to the Commissioner"); McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir.

9   2011) ("[a] disability is an administrative determination of how an impairment, in relation to

10  education, age, technological, economic and social factors, affects ability to engage in gainful

11  activity").

12       Second, the ALJ rejected Dr. Baudino's December 22, 2011 letter because Dr. Baudino

13  did not report any objective findings in support of his opinion.  (AR 22.)  In fact, the ALJ pointed

14  out that Dr. Baudino's October 2011 report indicated mental status findings that included good

15  judgment, normal affect, and some symptoms of depression.  (AR 22.)  On October 26, 2011, Dr.

16  Baudino found that Plaintiff had "depressive disorder, not elsewhere classified."  (AR 320.)  Dr.

17  Baudino noted that he explained to Plaintiff that she was on medication for depression and sleep

18  and that the best thing for her was support from her family.  (AR 320.)  Dr. Baudino found that

19  Plaintiff had good judgment; normal affect; was active and alert; was oriented as to time, place,

20  and person; depressed; and tearful at times.  (AR 320.)  Plaintiff does not point out, and there is

21  no evidence in the record of objective findings by Dr. Baudino in support of his opinion.  Dr.

22  Baudino's treatment notes, and specifically the October 26, 2011 notes, are inconsistent with his

23  opinion.  Thomas, 278 F.3d at 957 (holding that ALJ does not have to accept findings that are

24  not supported by the record).

25       Therefore, the Court finds that the ALJ provided specific and legitimate reasons to reject

26  the opinion of Dr. Baudino that are supported by substantial evidence in the record.  Ryan, 528

27

28

12

1  F.3d at 1198.[8]

2        2.      Rejection of Dr. Jodhka's Opinion

3        Dr. Jodhka treated Plaintiff's depression from 2012 to 2014.  (AR 359, 400.)  Dr. Jodhka

4  diagnosed major depressive disorder, which was treated with medication and cognitive

5  behavioral therapy.  (AR 351.)  Dr. Jodhka described Plaintiff's depression as dysphoria, apathy,

6  and decreased energy levels.   (AR 350.)   Dr. Jodhka found that Plaintiff had a moderate

7  prognosis and she would require time for symptomatic relief.  (AR 351.)

8        The ALJ found:

9        I have given the opinion of Dr. Jodhka no weight, because she dids [sic] not
10       address the claimant's condition during the period at issue, that is, from the
         alleged onset date of December 1, 2009 to the last date insured, September 30,
11       2011.   Moreover, she had no personal knowledge of the claimant's condition
         during that period.

12  (AR 23.)

13        The ALJ gave specific and legitimate reasons for giving no weight to Dr. Jodhka's

14  opinion.  In <u>Magallanes v. Bowen</u>, 881 F.2d 747, 754 (9th Cir. 1989), the Ninth Circuit found

15  that when a treating physician opines about a claimant's condition prior to the date that the

16  treating physician had direct personal knowledge of the condition, the treating physician is

17  "scarcely different from any non-treating physician with respect to that time period."  An ALJ

18  can reasonably find the opinion of a doctor who treated a claimant more persuasive than the

19  retrospective opinion of a doctor who does not treat a claimant until later.  <u>Id.</u>   "After-the-fact

20  psychiatric diagnoses are notoriously unreliable."  <u>Vincent on Behalf of Vincent v. Heckler</u>, 739

21  F.2d 1393, 1395 (9th Cir. 1984) (citing <u>Schauer v. Schweiker</u>, 675 F.2d 55, 60 n.5 (2d Cir.

22  1982)).

23        Here, Dr. Jodhka did not start treating Plaintiff until October 2012.  (AR 400.)  In the

24  February 24, 2013 report and the February 25, 2014 report, Dr. Jodhka noted that Plaintiff had

25  depression.  (AR 350-57, 400-03.)  Although Dr. Jodhka stated in the February 24, 2013 report

---

[8] As these are two specific and legitimate reasons provided by the ALJ for rejecting Dr. Baudino's opinion, the Court does not address whether the inconsistency between Dr. Baudino's opinion and Dr. Liss and Dr. Singh's opinion is a specific and legitimate reason to reject Dr. Baudino's opinion.

that Plaintiff's depression had lasted for more than a year, she never states that it started before September 30, 2011.  (AR 350-57.)  In the February 24, 2013 report, Dr. Jodhka states that Plaintiff's disability is temporary from February 25, 2013, to February 25, 2014.  (AR 356.)  Dr. Jodhka did not specifically opine as to Plaintiff's condition prior to the last date insured. Although Plaintiff's counsel had said that the new evidence after the date last insured would not do anything for the period of time at issue, the ALJ considered it and provided specific and legitimate reasons for rejecting it as probative of Plaintiff's condition prior to the date last insured.   Therefore, the ALJ did not err in giving no weight to Dr. Jodhka's opinion. Accordingly, the Court finds that the ALJ's decision that Plaintiff's mental impairments were not severe is supported by substantial evidence and the ALJ did not err.

## B.    Further Development of the Record

Plaintiff argues that due to the lack of clarity or insufficiency of the evidence of Plaintiff's mental impairments in the record, the ALJ had a duty to further develop the record before finding Plaintiff's mental impairments non-severe at step two.  (ECF No. 10 at 9-11.) Plaintiff argues that agency psychological consultants Dr. Bobba, Dr. Rubaum, Dr. Liss, and Dr. Singh stated that the evidence in the file was not sufficient to fully evaluate the claim.  (ECF No. 10 at 9; ECF No. 18 at 3.)  Plaintiff suggests that the ALJ could have ordered a consultative examination or re-contacted Plaintiff's treating physicians.  (ECF No. 10 at 11.)

The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  Further, the ALJ's duty to fully develop the record is heightened where the claimant may be mentally disabled and, therefore, unable to protect her own interests.  Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992).  The Commissioner has broad latitude in whether to order a consultative examination and the government is not required to bear the expense for an examination of every claimant.  Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001).  There are cases in which a consultative examination would be required, "including those in which additional evidence needed is not contained in the records of the claimant's medical sources, and those involving an ambiguity or

insufficiency in the evidence that must be resolved." Reed, 270 F.3d at 842 (internal

punctuation and citations omitted). A specific finding of ambiguity or inadequacy in the record

is not required to trigger the necessity to further develop the record where the record itself

establishes the ambiguity or inadequacy. McLeod, 640 F.3d at 885.

Here, the ALJ found:

> On the other hand, Disability Determinations Service medical consultant, L. Bobba, M.D. reviewed the record on January 31, 2012, and opined that allegations of hand, knee, and cervical problems were not supported by the medical record. There were no detailed examination findings in the file, and the date last insured was in the past. There was insufficient evidence (IE) for full evaluation of the claim, and obtaining additional evidence was not feasible (Exhibit 1A). On August 29, 2012, another medical consultant Norman J. Rubaum, M.D., endorsed this opinion (Exhibit 3A). As noted above, the finding that there was IE in effect meant that the claimant did not meet her burden of proof at sequential evaluation step two. I accord these opinions some weight.

(AR 23).

Section 404.1520b of Title 20 of the Code of Federal Regulations provides:

> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section. We might not take all of the actions listed below. We will consider any additional evidence we receive together with the evidence we already have.
> (1) We may recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;
> (2) We may request additional existing records (see § 404.1512);
> (3) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or
> (4) We may ask you or others for more information.
>
> (d) When there are inconsistencies in the evidence that we cannot resolve or when, despite efforts to obtain additional evidence, the evidence is insufficient to determine whether you are disabled, we will make a determination or decision based on the evidence we have.

Viewing the record as a whole, the Court finds that the ALJ did not err by rendering a

decision without further developing the record. The facts in this case are not similar to other

instances in which the ALJ was found to have a duty to further develop the record.   See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D. Cal. 2010) (ALJ erred where failed to determine if claimants benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D. Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).

Dr. Bobba found that "[t]he evidence in file is not sufficient to fully evaluate [Plaintiff's] claim and the evidence needed cannot be obtained." (AR 71.)  On reconsideration, Dr. Rubaum agreed with Dr. Bobba.  (AR 84-85.)  Based on Dr. Bobba and Dr. Rubaum's opinions that obtaining additional evidence was not feasible, the ALJ made the finding that obtaining additional evidence was not feasible.  (AR 23.)  The ALJ determined that the best way to handle the matter was to evaluate the claim based on the record before him.  At the time of the February 28, 2014, hearing before the ALJ, it was approximately two years and five months after the date last insured.  Accordingly, the Court finds that there is substantial evidence in the record that the ALJ acted in accordance with section 404.1520b(c) and (d) and that the ALJ did not fail to develop the record.

### C.    Plaintiff's Credibility

Plaintiff argues that the ALJ erred by finding her not credible, and specifically by not considering her work history.  Plaintiff states that she worked for 27 1/2 out of 29 years and that this should have been considered by the ALJ when evaluating her credibility.  Defendant counters that the ALJ properly found Plaintiff's testimony regarding her symptoms not fully credible because he found the Plaintiff's treatment record and total symptom relief did not support her claims and her daily activities showed abilities inconsistent with her allegations of disability and are inconsistent with her specific claims at the hearing.

"An ALJ is not required to believe every allegation of disabling pain or other non-

exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

The ALJ can only reject the claimant's testimony regarding the severity of her symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could have been reasonably expected to produce some of the alleged symptoms during the relevant period.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for these reasons.  Her testimony was not consistent with the relevant medical evidence with respect to her symptoms during the relevant period, or shortly thereafter.

(AR 21.)

1.     Plaintiff's Work History

First, Plaintiff, citing 20 C.F.R. § 404.1529(c)(3) and SSRs 96-7p and 96-8p, argues that the ALJ needed to consider her work history when evaluating her credibility.  Plaintiff contends that she accrued covered earnings in 110 of the 116 quarters prior to date of disability.  Defendant counters that Plaintiff has failed to identify controlling law that requires an ALJ to discuss work history.  Defendant argues that courts that have discussed the significance of work history have noted that work history is only a factor to consider.[9]

20 C.F.R. § 404.1529 states:

> We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons.

While work history is a factor that the ALJ considers in determining credibility, Plaintiff does not cite to, and the Court is unaware of any requirement that an ALJ must discuss the work history in the credibility section of the ALJ's decision.  The cases Plaintiff cites support the proposition that a good work history is a positive factor for a claimant's credibility and that work history must be considered by the ALJ.  See Newton v. Apfel, 209 F.3d 448, 455 n.3 (5th Cir. 2000); Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984); Taybron v. Harris, 667 F.2d 412, 415 n. 6 (3d Cir. 1981); Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980).  However, as discussed below, the ALJ gave clear

---

[9] Defendant also argues that Plaintiff stopped working because the cannery closed, so her argument that she would not abandon her career may not hold much weight.  The Court does not address this argument as the Court finds that there is no requirement to discuss work history in the credibility section of the decision.

1    and convincing reasons for finding Plaintiff's statements not credible, which is in accordance

2    with binding authority.  See Carmickle, 533 F.3d at 1160; Moisa, 367 F.3d at 885.  The ALJ was

3    not required to specifically cite to Plaintiff's work history in the section on credibility, and the

4    ALJ did discuss Plaintiff's prior work in other parts of the decision.  (AR 20.)  Accordingly, the

5    Court finds that the ALJ did not err by not discussing Plaintiff's work history in the section of

6    the decision where he discussed credibility.

7                    2.      Inconsistent with Relevant Medical Evidence

8           The ALJ found that Plaintiff's statements regarding her symptoms were not consistent

9    with relevant medical evidence during the relevant period or shortly thereafter.  (AR 21.)  On

10   October 26, 2011, Dr. Baudino found that Plaintiff had good judgment; normal affect; was active

11   and alert; was oriented as to time, place, and person; depressed; mild distress; and tearful at

12   times.  (AR 320.)  Therefore, this medical evidence is inconsistent with her claims regarding her

13   symptoms related to her disabling depression.  The October 26, 2011 report also indicated that

14   Plaintiff had mild distress, but normal ambulation and some muscle spasm in the trapezius area,

15   but no other atypical physical findings.  (AR 320.)  On November 17, 2010, Plaintiff's periodic

16   health exam revealed that she had a normal physical exam, and specifically normal findings for

17   general category, neck, and extremities.  (AR 334.)  On Plaintiff's December 2011 disability

18   report, she indicated that her conditions affect her ability to lift, squat, bend, stand, walk, kneel,

19   climb stairs, see, and use her hands.  (AR 270.)  The medical evidence is inconsistent with

20   Plaintiff's physical complaints.  Therefore, the ALJ was proper to consider that the relevant

21   medical evidence does not support Plaintiff's alleged symptoms during the relevant time period.

22                   3.      Failure to Comply with Treatment

23          The ALJ discredited Plaintiff because she was not always compliant with treatment.  (AR

24   21.)  Plaintiff argues that this was improper because she did not have insurance for most of the

25   time period.  An "unexplained, or inadequately explained, failure to seek treatment" may be the

26   basis for an adverse credibility finding.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

27   However, lack of medical treatment due to an inability to afford medical treatment does not

28   support an adverse credibility determination.  Orn v. Astrue, 495 F.3d at 638.

1    Here, Plaintiff's treatment records indicate that she was "self-pay" during the relevant

2    time period and that she could not afford some type of treatment.  (AR 316-18.)  It is unclear

3    how Plaintiff failed to comply with treatment and whether any noncompliance was because of

4    Plaintiff's inability to afford treatment.  Therefore, the Court does not find that this is a clear and

5    convincing reason for discrediting Plaintiff.

6         4.    Activities of Daily Living Related to Socialization

7    The ALJ also discredited Plaintiff because she was not socially isolated during the

8    relevant period, as she subsequently alleged.  (AR 21.)  There are two ways for an ALJ to "use

9    daily activities to form the basis of an adverse credibility determination: if the claimant's activity

10   contradicts his testimony or if the claimant's activity meets the threshold for transferable work

11   skills."  Phillips v. Colvin, 61 F. Supp. 3d 925, 944 (N.D. Cal. 2014); Valentine v. Astrue, 574

12   F.3d 685, 694 (9th Cir. 2009); Molina, 674 F.3d at 1112-1113.  Review of the ALJ's opinion in

13   this instance shows that the ALJ found that Plaintiff's activity contradicts her testimony

14   regarding social isolation.

15        In particular, an ALJ may consider inconsistencies between a claimant's activities and

16   her subjective complaints.  See Valentine, 574 F.3d at 693 (ALJ properly determined that the

17   claimant's daily activities "did not suggest [the claimant] could return to his old job at Cummins,

18   but . . . did suggest that [the claimant's] later claims about the severity of his limitations were

19   exaggerated"); Molina v. Astrue, 674 F.3d at 1112 (the ALJ may consider "whether the claimant

20   engages in daily activities inconsistent with the alleged symptoms") (internal citation omitted).

21        Plaintiff's daily activities are inconsistent with Plaintiff's claimed limitations regarding

22   social isolation.  Plaintiff's daily activities show that she was not socially isolated.  Plaintiff

23   testified at the hearing that prior to September 2011 she went to church or a social gathering

24   about twice a month for about an hour.  (AR 53.)  In December 2011, Plaintiff reported that she

25   went out daily and that she shopped for groceries and condiments three times a week for about

26   two hours.  (AR 268.)  She spent time talking and visiting with others twice a week and she went

27   to church once a week for an hour.  (AR 269.)  She stated that she took care of her grandchildren

28   and sometimes gave them rides to and from school.  (AR 266.)  Therefore, Plaintiff's daily

activities are inconsistent with her claims of social isolation.  An ALJ may properly consider any inconsistencies between a claimant's testimony and conduct.  See Thomas v. Barnhart, 278 F.3d at 958-959.  If the ALJ's interpretation is reasonable and supported by substantial evidence, then it is not the Court's role to second-guess it.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  Therefore, the ALJ did not err when he considered that Plaintiff's daily activities are inconsistent with Plaintiff's claims of social isolation.

     5.    The Did Not Err in the Credibility Finding

The ALJ provided clear and convincing reasons supported by substantial evidence for discrediting Plaintiff.[10]  See Batson, 359 F.3d at 1196-1197.  Even though the ALJ erred by finding Plaintiff's failure to comply with treatment a basis for finding her not credible, that error is harmless where the other reasons the ALJ offers are proper and are supported by substantial evidence.  See Carmickle, 533 F.3d at 1162 (citing Batson, 359 F.3d at 1197).  The Court finds that the ALJ provided clear and convincing reasons that are supported by substantial evidence in the record for the determination that Plaintiff's symptoms are not as limiting as she claimed.

**V.**

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that Plaintiff's social security appeal is DENIED.

IT IS SO ORDERED.

Dated:   **December 1, 2016**

_____
UNITED STATES MAGISTRATE JUDGE

---

[10] Defendant argues that the ALJ also discussed the following reasons for discrediting Plaintiff: Plaintiff's allegedly disabling diabetes and pain were amenable to control with medication; evidence that both medications and lack of situational and family stressors led to significant improvements in Plaintiff's mental health symptoms; and Plaintiff's daily activities other than those relating to socialization.  However, the ALJ did not specifically cite these as reasons for discrediting Plaintiff in his decision.